THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| CENTER FOR BIOLOGICAL DIVERSITY<br>1411 K St. NW, Suite 1300<br>Washington, D.C. 20005<br><br>*Plaintiff*,<br><br>v.<br><br>UNITED STATES DEPARTMENT OF INTERIOR,<br>1849 C Street, NW<br>Washington, DC 20240,<br><br>*Defendant*. | Case No.:<br><br>**COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF**<br><br>**(Freedom of Information Act, 5 U.S.C. § 552)** |

## INTRODUCTION

1. In this action brought under the Freedom of Information Act, 5 U.S.C. § 552, as amended ("FOIA"), the Center for Biological Diversity ("Center") – an environmental conservation organization that works to prevent the extinction of wild species and protect their habitats – challenges the United States Department of Interior's ("Interior Department's") violations of FOIA resulting from their failure to conduct adequate searches and to provide records in response to the Center's FOIA request seeking documents related to the United States Fish and Wildlife Service's ("FWS's") 2014 decision on the discontinuation of neonicotinoid pesticide use and genetically modified cropping practices in the National Wildlife Refuges ("NWRs")("2014 Neonic Decision") and FWS's 2018 decision to withdraw its 2014 Neonic Decision.

2. As of the filing of this complaint, the Interior Department has not produced any records responsive to the Center's FOIA request.

1

3. Prompt access to these records is necessary to effectuate FOIA's purpose of transparency. Thus, the Center seeks from the Court declaratory relief establishing that the Interior Department has violated FOIA and injunctive relief directing the agency to conduct an adequate search and to release any improperly withheld records, including all reasonably segregable portions of any lawfully exempt records, without any further delay.

## JURISDICTION AND VENUE

4. This Court has jurisdiction over this matter pursuant to 5 U.S.C. § 552(a)(4)(B) and 28 U.S.C. § 1331.

5. Venue is proper in this Court pursuant to 5 U.S.C. § 552(a)(4)(B) and 28 U.S.C. § 1391(e).

6. Injunctive relief is appropriate under 5 U.S.C. § 552(a)(4)(B) and 28 U.S.C. § 2202. Declaratory relief is appropriate under 28 U.S.C. § 2201.

## PARTIES

7. Plaintiff CENTER FOR BIOLOGICAL DIVERSITY is a national, non-profit conservation organization with offices throughout the United States. The Center has more than 81,000 members. The Center and its members are harmed by the Interior Department's violations of FOIA, as such violations preclude the Center from gaining a full understanding of the FWS's 2014 decision to recontinue the use of neonicotinoid pesticides and genetically modified cropping practices in the NWRs. The Center intends to use the requested information to better understand the Interior Department's management of NWR resources and its process for amending or withdrawing agency actions. The Interior Department's failure to comply with FOIA harms the Center's ability to provide full, accurate, and current information to the public

on a matter of public interest. Absent this information, the Center cannot advance its mission to protect native species and their habitat.

8. Defendant UNITED STATES DEPARTMENT OF INTERIOR is a cabinet-level agency within the executive branch of the United States government that manages federal lands and natural resources. The Department of Interior is in possession and control of the records that the Center seeks, and as such, it is subject to FOIA pursuant to 5 U.S.C. § 552(f). The Department of Interior is a federal agency responsible for applying and implementing the federal laws and regulations at issue in this complaint.

## STATUTORY BACKGROUND

9. FOIA's basic purpose is government transparency. FOIA requires federal agencies to release requested records to the public unless one or more specific statutory exemptions applies. 5 U.S.C. § 552(b)(1)-(9).

10. Within 20 working days of receiving a FOIA request, an agency must determine if it will release requested records and notify the requester of its determination and the reasons therefore, the right to seek assistance from the FOIA Public Liaison, and the right to appeal an adverse agency determination. *Id.* § 552(a)(6)(A)(i).

11. Only in "unusual circumstances" may an agency extend the time to make a final determination by no more than 10 additional working days, but it must provide written notice to the requester setting forth the unusual circumstances for the extension and "the date on which a determination is expected to be dispatched." *Id.* § 552(a)(6)(B)(i). If the agency provides written notice that the request cannot be processed within the specified time limit, the agency shall provide "an opportunity to limit the scope of the request so that it may be processed within" the statutory time limit or "an opportunity to arrange with the agency an alternative time frame

for processing the request or a modified request" and shall make available its FOIA Public Liaison to "assist in the resolution of any disputes between the requester and the agency." *Id.* § 552(a)(6)(B)(ii).

12. FOIA requires each agency to make reasonable efforts to search for records in a manner that is reasonably calculated to locate records that are responsive to the FOIA request. *Id.* § 552(a)(3)(C)-(D).

13. FOIA requires federal agencies to promptly disclose requested records. *Id.* § 552(a)(3)(A), (a)(6)(C)(i).

14. In certain limited instances, records may be withheld pursuant to nine specific exemptions. *Id.* § 552(b). These exemptions must be narrowly construed in light of FOIA's dominant objective of disclosure, not secrecy.

15. FOIA places the burden on the agency to prove that it may withhold responsive records from a requester. *Id.* § 552(a)(4)(B).

16. FOIA provides this Court jurisdiction "to enjoin the agency from withholding agency records and to order the production of any agency records improperly withheld from the complainant." *Id.* § 552(a)(4)(B).

## FACTUAL BACKGROUND

### Background to the FOIA Request

17. First applied in the 1990s, neonicotinoid pesticides are a class of nicotine-based insecticides that share a common mode of action that affects the central nervous system of insects, resulting in paralysis and death. Like nicotine, neonicotinoid pesticides work by binding to nerve cell receptors that usually respond to the neurotransmitter acetylcholine. Neonicotinoid pesticides are considerably more toxic to insects than other types of insecticides and persist

4

longer in the environment. At high doses, neonicotinoids over-excite neurons, which can lead to epileptic-like effects, cell death, or nerve cell inactivation. At lower levels, normal neuronal function is impaired. After repeated exposure, target nerve cells may become more vulnerable and toxicity to insects increases. The European Food Safety Authority (EFSA) concluded that certain neonicotinoid pesticides used on farms and gardens can harm honeybees, bumblebees, and solitary bees. Research has shown that neonicotinoid pesticides also negatively affect various types of birds, both through the direct consumption of treated crop seeds and indirectly by affecting the insect populations they feed on.[1] Consumption of just a few seeds is enough to cause long-term damage to a birds' reproduction and development.

18.     The National Wildlife Refuge System ("Refuge System") is America's largest collection of lands specifically set aside for the preservation of fish and wildlife.  In creating the Refuge System, Congress resolutely established a present and future national commitment to ensuring that these lands are managed to support the conservation of fish, wildlife, and plant species—including endangered and threatened species—and their habitats.  16 U.S.C. § 668dd(a)(2),(a)(4)(A).  To achieve this mission, Congress directed the Interior Department and FWS to "ensure that the biological integrity, diversity, and environmental health of the [Refuge] System are maintained" through its actions.  16 U.S.C. § 668dd(a)(4)(B).

19.     In furtherance of the National Wildlife Refuge Improvement Act's, 16 U.S.C. §§ 668dd-668ee ("Refuge Act's") biological integrity and wildlife conservation objectives for the Refuge System, FWS in 2014 issued a decision requiring that neonicotinoid pesticides and genetically modified crops be phased out from use in the Refuge System by January 2016 (the 2014 Decision).  The 2014 Decision allowed the possibility for neonicotinoid pesticides or

---

[1] Yijia Li, Ruiqing Miao, Madhu Khanna, *Neonicotinoids and Decline in Bird Biodiversity in the United States*, Nat Sustain (2020), available at https://doi.org/10.1038/s41893-020-0582-x.

5

genetically modified crops to be utilized by a refuge on a case-by-case basis, but only when essential to meet the refuge's wildlife management objectives.

20.     On information and belief, following the 2014 Decision, FWS in fact ended the use of these harmful practices on all refuges in the Refuge System except those specifically granted an exception in the 2014 Decision based on mandates unique to those refuges.

21.     Nevertheless, on August 2, 2018, without any advanced notice to the public or opportunity for public engagement, and without any compliance with the National Environmental Protection Act or the Endangered Species Act, FWS abruptly issued a decision completely reversing the 2014 Decision and jettisoning the important pesticide and genetically modified crop reduction commitments and benchmarks that had been achieved through the 2014 Decision (hereinafter the 2018 Decision).  The 2018 Decision does not explain how the use of harmful neonicotinoid pesticides and genetically modified crops can now be operated in conformity with FWS policy or in compliance with the requirements of the Refuge Act.

22.     According to the 2018 Decision, it is now the official position of FWS that the use of bird and bee-killing neonicotinoid pesticides and pesticide-intensive genetically modified crops can be utilized in the Refuge System and on national wildlife refuges, including on refuges that were established specifically for the purpose of conserving and protecting critically endangered wildlife.

23.     The 2018 Decision represents Defendants' formal position on these uses and is binding on the FWS and its management of the Refuge System.  It is a final agency action from which important legal, policy, and practical consequences flow.

24.     The Center seeks records related to FWS's 2014 Decision and 2018 Decision regarding the harmful use of neonicotinoid pesticides and genetically modified crops within

NWRs.  In addition, the Center seeks records related to the 2017 letter by the Information Technology & Innovation Foundation requesting then-Secretary of the Interior Ryan Zinke to reverse FWS's 2014 Neonic Decision, including the final copy of the letter.

## The Center's FOIA Request to the Department of Interior
## (DOC-IOS-2018-01493 (Department of Interior FOIA Request)

25.     On August 9, 2018, the Center submitted a FOIA request to the Department of Interior via FOIAonline.  In that request, the Center sought:

> 1) From January 1, 2017 to the date the Interior Department conducts this search, the records mentioning, including, and/or referencing FWS 2014 Decision on the discontinuation of neonicotinoid pesticide use and genetically modified cropping practices in NWRs, including but not limited to records generated in connection with the implementation and/or withdrawal of the decision;
>
> 2) The records generated in connection to FWS's August 2, 2018 decision to withdraw the 2014 Neonic Decision; and
>
> 3) The records mentioning, including, and/or referencing FWS's consideration of the September 26, 2017 letter by the Information Technology & Innovation Foundation requesting that Ryan Zinke reverse FWS's 2014 Neonic Decision.
>
> For this request, the term "records of communications" refers to, but is not limited to, documents, correspondence (including, but not limited to, inter and/or intra-agency correspondence as well as correspondence with entities or individuals outside the federal government), emails, letters, notes, recordings, telephone records, voicemails, telephone notes, telephone logs, text messages, and chat messages.

26.     On August 15, 2018, the Department of Interior issued an automated electronic mail message through FOIAonline, acknowledging receipt of the FOIA request.  The automated message assigned the FOIA request tracking number DOC-OS-2018-01493. The Interior Department also placed the request under the "complex" processing track and invoked a 10-workday extension for the FOIA request.

7

27. On September 25, 2018, after receiving no further communications from the Department of Interior, the Center sent a letter via electronic mail message to the Department of Interior Departmental Freedom of Information & Privacy Act Officer, notifying the agency that it had not complied with FOIA by failing to make a final determination on the Center's FOIA request within FOIA's statutory deadline, requesting an estimated date by which the agency would complete DOC-IOS-2018-01493, and offering to assist in any way.

28. On November 13, 2018, after receiving no additional communications from the Department of Interior, the Center sent an electronic mail message to the Department of Interior Departmental Freedom of Information & Privacy Act Officer, again requesting an estimated date of completion for DOC-IOS-2018-01493.

29. On June 13, 2019, after receiving no additional communications from the Department of Interior, the Center sent an electronic mail message to the Department of Interior Departmental Freedom of Information & Privacy Act Officer, again requesting an estimated date of completion for DOC-IOS-2018-01493.

30. As of the date of this complaint, which is 507 workdays after the 20-day workday determination deadline of September 7, 2018, the Center has received no records and no additional communications from the Department of Interior regarding the Center's FOIA request.

31. In connection with the Center's FOIA request, the Department of Interior has not requested additional information from the Center or notified the Center of any "unusual circumstances" that prevent it from complying with FOIA's deadline for a determination.  5 U.S.C. § 552(a)(6)(A)-(B).

32. The Department of Interior's failure to conduct an adequate search for responsive records and failure to provide any and all responsive records to the Center undermines FOIA's primary purpose of transparency and openness in government.

33. The Center has been required to expend resources to prosecute this action.

## CLAIMS FOR RELIEF

### FIRST CLAIM FOR RELIEF
### VIOLATION OF THE FREEDOM OF INFORMATION ACT

#### Failure to Conduct Adequate Searches

34. Plaintiff re-alleges and incorporates by reference the allegations made in all preceding paragraphs.

35. The Center has a statutory right to have the Department of Interior process its FOIA request in a manner that complies with FOIA.  5 U.S.C. § 552(a)(3).

36. The Department of Interior violated the Center's rights in this regard when it unlawfully failed to undertake a search that is reasonably calculated to locate all records that are responsive to the Center's FOIA request.

37. Based on the nature of the Center's organizational activities, it will undoubtedly continue to employ FOIA's provisions in record request to the Department of Interior in the foreseeable future.

38. The Center's organizational activities will be adversely affected if the Department of Interior continues to violate FOIA's requirement to undertake a search that is reasonably calculated to locate records that are responsive to the Center's FOIA request.

39. Unless enjoined and made subject to a declaration of the Center's legal rights by this Court, the Department of Interior will continue to violate the Center's rights to receive public records under FOIA.

## SECOND CLAIM FOR RELIEF
## VIOLATION OF THE FREEDOM OF INFORMATION ACT

### Failure to Promptly Disclose Responsive Records

40. Plaintiff re-alleges and incorporates by reference the allegations made in all preceding paragraphs.

41. The Department of Interior violated FOIA and the Department of Interior's implementing regulations for FOIA by failing to promptly disclose records that are responsive to the Center's FOIA request.

42. None of FOIA's statutory exemptions apply to the records that the Center seeks.

43. The Center has a statutory right to the records it seeks.

44. Based on the nature of the Center's organizational activities, it will undoubtedly continue to employ FOIA's provisions in record request to the Department of Interior in the foreseeable future.

45. The Center's organizational activities will be adversely affected if the Department of Interior continues to violate FOIA's disclosure provisions as it has in this case.

46. Unless enjoined and made subject to a declaration of Plaintiff's legal rights by this Court, the Department of Interior will continue to violate Plaintiff's rights to receive public records under FOIA.

## THIRD CLAIM FOR RELIEF
## VIOLATION OF THE FREEDOM OF INFORMATION ACT

### Failure to Provide Reasonably Segregable Portions of Any Lawfully Exempt Records

47. Plaintiff re-alleges and incorporates by reference the allegations made in all preceding paragraphs.

48. The Center has a statutory right to any reasonably segregable portion of a record that contains information that is subject to any of FOIA's exemptions. 5 U.S.C. § 552(b).

49. The Department of Interior violated the Center's rights in this regard by unlawfully withholding reasonably segregable portions of any lawfully exempt records that are responsive to the Center's FOIA request.

50. Based on the nature of the Center's organizational activities, it will undoubtedly continue to employ FOIA's provisions in record request to the Department of Interior in the foreseeable future.

51. The Center's organizational activities will be adversely affected if the Department of Interior is allowed to continue violating FOIA's disclosure provisions as it has in this case.

52. Unless enjoined and made subject to a declaration of the Center's legal rights by this Court, the Department of Interior will continue to violate the Center's rights to receive public records under FOIA.

## FOURTH CLAIM FOR RELIEF:
## VIOLATION OF THE FREEDOM OF INFORMATION ACT

### Failure to Provide a Determination on the FOIA Request

53. Plaintiff re-alleges and incorporates by reference the allegations made in all preceding paragraphs.

54. The Department of Interior violated FOIA by failing to make a timely determination on the Center's FOIA request.  5 U.S.C. § 552(a)(6)(A)(i).

55. The Center has a statutory right to receive a determination from the Department of Interior, as well as to promptly receive the underlying records it seeks.

56. The Department of Interior has still not given the Center a determination on its FOIA request that describes the scope of the records it intends to produce or withhold and the reasons for withholding any records or informs the Center that is may appeal any specific adverse determination within the relevant time periods in 5 U.S.C. § 552(a)(6)(A)(i) or 5 U.S.C. § 552(a)(6)(B).  *See also* 5 U.S.C. § 552(a)(7).

57. Based on the nature of the Center's organizational activities, it will undoubtedly continue to employ FOIA's provisions in record request to the Department of Interior in the foreseeable future.

58. The Center's organizational activities will be adversely affected if the Department of Interior continues to violate FOIA's requirement to provide a lawful determination on the Center's FOIA request.

59. Unless enjoined and made subject to a declaration of the Center's legal rights by this Court, the Department of Interior will continue to violate the Center's rights to receive public records under FOIA.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff prays that this Court:

1. Order Defendant to respond to Plaintiff's FOIA request as required by the FOIA;

      2.      Order Defendant to conduct a search that is reasonably calculated to locate all records responsive to each of Plaintiff's FOIA request, and to provide Plaintiff with all responsive records and reasonably segregable portions of lawfully exempt records sought in this action.

      3.      Declare that Defendant's failure to undertake a search that is reasonably calculated to locate all records that are responsive to Plaintiff's FOIA request, as alleged above, is unlawful under FOIA, 5 U.S.C. § 552(a)(6)(A)(i).

      4.      Declare that Defendant's failure to provide Plaintiff with reasonably segregable portions of records which may be lawfully subject to a FOIA exemption, as alleged above, is unlawful under FOIA, 5 U.S.C. § 552(a)(8).

      5.      Declare that Defendant's failure to timely make a determination on Plaintiff's FOIA request is unlawful under FOIA, 5 U.S.C. §§ 552(a)(6)(A)(i) and (ii).

      6.      Award Plaintiff its costs and reasonable attorney fees pursuant to 5 U.S.C. § 552(a)(4)(E).

      7.      Grant such other and further relief as the Court may deem just and proper.

DATED: September 21, 2020                Respectfully submitted,

                                                  /s/William J. Snape, III _____
William J. Snape, III (D.C. Bar 455266)
Center for Biological Diversity
1411 K Street, NW, Suite 1300
Washington, DC 20005
(202) 536-9351 (cell)
(202) 274-4443 (land)
wsnape@wcl.american.edu

Lalli Venkatakrishnan (CA Bar 323747)*
Center for Biological Diversity
1212 Broadway, Suite 800
Oakland, CA 94612
(510) 676-0348 (cell)

(510) 844-7150 (fax)
lvenkat@biologicaldiversity.org

*Attorneys for Plaintiff*

*Seeking admission *pro hac vice*